2020 IL App (1st) 173020-U

No. 1-17-3020

August 12, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 12728 |
| | ) | |
| VICTOR DEJESUS, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Ellis and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for attempt murder is affirmed where the trial court appropriately found defendant fit to stand trial. Pursuant to Illinois Supreme Court Rule 472, we decline to reach defendant's challenge to the trial court's calculation of presentence custody credit.

¶ 2    Following a bench trial, defendant Victor DeJesus was found guilty of one count of attempt murder and one count of aggravated battery with a firearm. The trial court merged the aggravated battery with a firearm count into the attempt murder count and sentenced defendant to 31 years'

imprisonment for attempt murder. Defendant appeals, arguing that the trial court performed an inadequate inquiry into whether he was fit to stand trial and that he is entitled to more presentence custody credit than the trial court granted. We affirm defendant's conviction and remand as to presentence custody credit.

¶ 3    Defendant was charged by indictment with multiple offenses stemming from an incident on August 11, 2014. On September 25, 2014, he was arrested for an unrelated offense in Puerto Rico. Defendant waived extradition on October 9, 2014, and Chicago police department officers took custody of him on July 23, 2015. The State proceeded on one count of attempt murder (720 ILCS 5/8-4(a) (West 2014); 720 ILCS 5/9-1(a)(1) (West 2014)) and one count of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2014)).

¶ 4    Defendant first appeared in court on August 24, 2015, and the court appointed a public defender to represent him. At a June 13, 2016 pretrial status hearing, the court granted a private attorney leave to substitute as defendant's counsel. Defense counsel informed the court that he was trying to procure defendant's medical records "regarding mental health issues." On both August 1 and 31, 2016, defense counsel represented that he "may" request a behavioral clinical examination (BCX) pending receipt and review of the records. Defense counsel informed the court on October 12, 2016, that defendant had a medical history of "diagnosis bipolar." Counsel added that he would be requesting a BCX, but needed more time to finish retrieving the records. On December 20, 2016, defense counsel formally requested a BCX and tendered a proposed order, which the court stated it would sign.[1]

_____

[1] A copy of the order does not appear in the record.

¶ 5      The court received a letter from Dr. Fidel Echevarria of Forensic Clinical Services at a hearing on February 6, 2017. The first paragraph of the letter read, "Pursuant to Your Honor's Order," defendant was evaluated on January 25, 2017, "for the purpose of assessing his fitness to stand trial." Dr. Echevarria found defendant mentally fit to stand trial and legally sane at the time of the offense. According to Dr. Echevarria, defendant understood the proceedings, was not on psychotropic medication, and did not need such medication. The court noted that Dr. Echevarria found defendant "fit to stand trial and mentally sane at the time of his examination." Defense counsel stated that he wanted to ask Dr. Echevarria whether he spoke with a physician who "made a diagnosis" of defendant in Puerto Rico, and pending that conversation, the defense "can probably stipulate and forgo any hearing on the issue." The court responded, "If there's not a *bona fide* doubt *** as to the defendant's state of mind, is there any need for a hearing?" Defense counsel said he did not think there was. On March 9, 2017, the trial court entered an order allowing defense counsel to review Dr. Echevarria's psychiatric summary of defendant's examination.[2]

¶ 6      On March 30, 2017, defense counsel said he was willing to stipulate "to the findings" in Dr. Echevarria's letter. The prosecutor responded, "There's no issue, Judge. [Defendant] was found fit to stand trial." The court stated that Dr. Echevarria's letter expressed the "opinion that [defendant] is mentally fit to stand trial" and was "legally sane at the time of the alleged offense." At a subsequent pretrial hearing on May 3, 2017, defense counsel stated that defendant "went for [a] psychological evaluation" at the jail and was told he was "fine."

¶ 7      Defendant rejected the State's offer to plead guilty to aggravated battery with a firearm and the cause proceeded to trial. The evidence established that on August 11, 2014, defendant entered

_____

[2] The psychiatric summary does not appear in the record on appeal.

the El Taco Nazo restaurant near the 4100 block of West North Avenue and shot the victim, Fredis Lopez-Serrano, once in the chest from close range. Lopez-Serrano underwent surgery at Cook County Hospital. The two men never interacted before that day, but immediately prior to the shooting, defendant asked Lopez-Serrano, "what's your problem with me?"

¶ 8     The court found defendant guilty on both counts and denied his motion to reconsider and for a new trial. Defendant's presentence investigation report (PSI) revealed that he came from a "stable" family and did not suffer abuse or neglect as a child. He received As and Bs in high school, but required special education for attention deficit disorder (ADD) in elementary school. He attended Triton College from 2012 to 2014. Defendant was injured in a serious vehicular accident on August 12, 2014, and required 149 stitches in his face. During his incarceration, he received mental health treatment. He reported a history of panic attacks, and experienced excessive anxiety and stress due to the case.

¶ 9     After a sentencing hearing on October 19, 2017, the court merged the aggravated battery with a firearm count into the attempt murder count and sentenced defendant to 31 years' imprisonment for attempt murder. It credited defendant with 819 days for presentence incarceration. Defense counsel argued that defendant deserved additional credit for the time he spent in custody in Puerto Rico between October 9, 2014, when he waived extradition to Illinois, and July 23, 2015, when the Chicago police officers took him into custody. The State disagreed, and the court only credited defendant with time starting from July 23, 2015.

¶ 10     The October 19, 2017 mittimus misstated defendant's sentence. The court *sua sponte* issued a corrected mittimus on October 23, 2017, that did not credit defendant for the four days between October 19 and 23, 2017.

¶ 11    On appeal, defendant first argues that the court erred by not conducting an independent inquiry into his fitness to stand trial, and instead relied on a stipulation to Dr. Echevarria's findings. Defendant admits that he did not properly preserve this claim, but argues that we can reach it on plain error review.

¶ 12    Where a claimed error was not preserved below, the reviewing court can reach the issue on plain error review when a clear or obvious error occurred and "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48. A defendant's fitness to stand trial implicates a fundamental right and is thus cognizable under second prong plain error review. See *People v. Sandham*, 174 Ill. 2d 379, 382 (1996); *People v. Moore*, 408 Ill. App. 3d 706, 710 (2011). We must first decide if a clear or obvious error occurred. *People v. Staake*, 2017 IL 121755, ¶ 33.

¶ 13    The due process clause of the fourteenth amendment requires that a defendant be mentally fit before standing trial. U.S. Const., amend. XIV; *People v. Holt*, 2014 IL 116989, ¶ 51. A defendant is presumptively fit to stand trial, plead, and be sentenced, but will be deemed unfit "if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2014). "A defendant may be competent to participate at trial even though his mind is otherwise unsound." *People v. Eddmonds*, 143 Ill. 2d 501, 519 (1991).

¶ 14    The issue of a defendant's fitness can be raised by the court or the parties at any time before, during, or after trial. 725 ILCS 5/104-11(a) (West 2014). If a *bona fide* doubt as to a

defendant's fitness is raised, the court has a duty to hold a fitness hearing. *People v. Haynes*, 174 Ill. 2d 204, 226 (1996). No fitness hearing is required if the court does not find that a *bona fide* doubt exists as to a defendant's fitness. *People v. Hanson*, 212 Ill. 2d 212, 217-18 (2004).

¶ 15     At the defendant's request, the court can order that a qualified expert examine the defendant to determine if a *bona fide* doubt as to the defendant's fitness exists. 725 ILCS 5/104-11(b) (West 2014). The court also has discretion to *sua sponte* request an examination. 725 ILCS 5/104-11(a) (West 2014); *Hanson*, 212 Ill. 2d at 217. The court's mere act of ordering an examination does not demonstrate that *bona fide* doubt exists as to the defendant's fitness. *Hanson*, 212 Ill. 2d at 222. "Whether a *bona fide* doubt as to a defendant's fitness has arisen is generally a matter within the discretion of the trial court." *Sandham*, 174 Ill. 2d at 382.

¶ 16     The record shows that defendant's fitness to stand trial was first raised on June 13, 2016, when defense counsel mentioned the possibility of requesting a BCX because of defendant's "mental health issues." On October 12, 2016, defense counsel relayed to the court that defendant had a history of "diagnosis bipolar." Defense counsel made a formal BCX request on December 20, 2016, which the court granted. After receiving Dr. Echevarria's BCX letter, which deemed defendant fit to stand trial, the court asked whether any additional hearing would be necessary if a *bona fide* doubt did not exist. The parties agreed that an additional hearing would not be needed, and at a later status hearing, stipulated to Dr. Echevarria's findings. Neither party nor the court raised the issue of defendant's fitness again until this appeal.

¶ 17     We find that the trial court did not err by not holding a fitness hearing after receiving the BCX report. The court made no finding of a *bona fide* doubt of defendant's fitness before granting defense counsel's motion for a BCX, and the act of ordering the examination was not proof *per se*

that a *bona fide* doubt existed. See *Hanson*, 212 Ill. 2d at 222; see also *People v. Qurash*, 2017 IL App (1st) 143412, ¶ 43. After receiving the BCX report in which Dr. Echevarria found defendant fit to stand trial, the court asked defense counsel if a hearing was necessary "[i]f there's not a *bona fide* doubt" as to defendant's fitness. The court was therefore operating under the belief that there was no *bona fide* doubt as to defendant's fitness, a proposition to which both parties agreed. This was a reasonable stance, even in light of defendant's medical history of "diagnosis bipolar," because it is well-established that mental health issues are not sufficient on their own to demonstrate lack of fitness. See *Eddmonds*, 143 Ill. 2d at 519. Thus, there was no *bona fide* doubt regarding defendant's fitness at any point, and no fitness hearing was necessary. See *Hanson*, 212 Ill. 2d at 217-18.

¶ 18    Defendant cites to *People v. Cook*, 2014 IL App (2d) 130545, and *People v. Contorno*, 322 Ill. App. 3d 177 (2001), for the proposition that the court cannot rely solely on the stipulated findings of experts to determine a defendant's fitness. This argument is misplaced, however, because in both cases the trial court found a *bona fide* doubt existed regarding the defendants' fitness, but then failed to conduct an independent inquiry. See *Cook*, 2014 IL App (2d) 130545, ¶¶ 3, 19-20; *Contorno*, 322 Ill. App. 3d at 178-79. Here, the court never found that a *bona fide* doubt existed.

¶ 19    Defendant makes two new arguments in his reply brief: (1) the BCX was ordered under section 104-11(a) of the Code of Criminal Procedure of 1963 (725 ILCS 104-11(a) (West 2014)), which requires the court to hold a fitness hearing once a *bona fide* doubt is raised; and (2) the record demonstrates that a *bona fide* doubt existed, and the court never expressly stated otherwise.

These arguments are deemed waived because they were presented for the first time in a reply brief. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 20    Even if these arguments were appropriately presented, however, our ruling would remain the same. First, the section under which the court ordered the BCX is inconsequential. As our supreme court explained in *Hanson*, "In either instance, [proceeding under section 104-11(a) or 11(b) of the Code] *** if after the examination the trial court finds no *bona fide* doubt, no further hearings on the issue of fitness would be necessary." (Internal citations omitted.) *Hanson*, 212 Ill. 2d at 217. Here, notwithstanding that Dr. Echevarria's letter stated the "purpose" of his examination was "assessing [defendant's] fitness to stand trial," the court found that no *bona fide* doubt existed. Therefore, no further inquiry was required.

¶ 21    Second, defendant does not demonstrate that the court abused its discretion by not finding a *bona fide* doubt as to his fitness. The trial court has a duty to order a fitness hearing if at any point a *bona fide* doubt as to a defendant's fitness exists. *Sandham*, 174 Ill. 2d at 382. Factors for a trial court to consider include "a defendant's irrational behavior, demeanor at trial, any prior medical opinion on the defendant's competence, and any representations by defense counsel on the defendant's competence." *People v. Brown*, 236 Ill. 2d 175, 186-87 (2010).

¶ 22    Here, defendant points to no specific behavior or issue with his demeanor that should have concerned the trial court. Additionally, the record contains no prior medical opinion expressing concerns about defendant's fitness to stand trial. Finally, defense counsel accepted Dr. Echevarria's finding, agreed no *bona fide* doubt existed, relayed to the court that a subsequent psychological evaluation from the prison found nothing concerning, and did not question defendant's fitness again during the proceedings. Defendant cites his rejection of a plea offer, but

provides no authority holding that a defendant's exercise of his right to trial can indicate a lack of fitness. He also highlights his medical history of a vehicle accident and the fact that he sought mental health treatment in jail, but points to no behavior, remarks from counsel, or physician reports that suggest the court abused its discretion by not finding that these issues created a *bona fide* doubt as to his fitness. It is defendant's burden to demonstrate that the trial court abused its discretion, and he fails to make this showing. See *Sandham*, 174 Ill. 2d at 381-82. Absent error, defendant's request for plain error review is meritless and his default of this issue will be honored.

¶ 23    Defendant's final argument is that the trial court erroneously refused to grant him credit for the time he spent incarcerated in Puerto Rico after waiving extradition to Illinois, and failed to credit him with the four days between his original sentencing date and the court's issuance of a corrected mittimus.

¶ 24    On February 26, 2019, while this appeal was pending, our supreme court adopted new Illinois Supreme Court Rule 472, which sets forth the procedure in criminal cases for correcting sentencing errors in, as relevant here, "calculation of presentence custody credit." Ill. S. Ct. R. 472(a)(3) (eff. Mar. 1, 2019). On May 17, 2019, Rule 472 was amended to provide that "[i]n all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019). "No appeal may be taken" on the ground of any of the sentencing errors enumerated in the rule unless that alleged error "has first been raised in the circuit court." Ill. S. Ct. R. 472(c) (eff. May 17, 2019). Therefore, pursuant to Rule 472, we

"remand to the circuit court to allow [defendant] to file a motion pursuant to this rule," raising the

alleged errors regarding presentence custody credit. Ill. S. Ct. R. 472(e) (eff. May 17, 2019).

¶ 25    Affirmed; remanded as to presentence custody credit.