2020 IL App (1st) 173020-U

SECOND DIVISION
Order filed August 12, 2020
Supplemental Order Upon Denial of Rehearing September 14, 2021

1-17-3020

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 12728 |
| | ) | |
| VICTOR DEJESUS, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: Defendant's conviction for attempt murder is affirmed where the trial court appropriately found defendant fit to stand trial. Pursuant to Illinois Supreme Court Rule 472, we decline to reach defendant's challenge to the trial court's calculation of presentence custody credit.

¶ 2    Following a bench trial, defendant Victor DeJesus was found guilty of one count of attempt murder and one count of aggravated battery with a firearm. The trial court merged the aggravated battery with a firearm count into the attempt murder count and sentenced defendant to 31 years' imprisonment for attempt murder. Defendant appeals, arguing that the trial court performed an

inadequate inquiry into whether he was fit to stand trial and that he is entitled to more presentence custody credit than the trial court granted. We affirm defendant's conviction and remand as to presentence custody credit.

¶ 3        Defendant was charged by indictment with multiple offenses stemming from an incident on August 11, 2014. On September 25, 2014, he was arrested for an unrelated offense in Puerto Rico. Defendant waived extradition on October 9, 2014, and Chicago police department officers took custody of him on July 23, 2015. The State proceeded on one count of attempt murder (720 ILCS 5/8-4(a) (West 2014); 720 ILCS 5/9-1(a)(1) (West 2014)) and one count of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2014)).

¶ 4        Defendant first appeared in court on August 24, 2015, and the court appointed a public defender to represent him. At a June 13, 2016 pretrial status hearing, the court granted a private attorney leave to substitute as defendant's counsel. Defense counsel informed the court that he was trying to procure defendant's medical records "regarding mental health issues." On both August 1 and 31, 2016, defense counsel represented that he "may" request a behavioral clinical examination (BCX) pending receipt and review of the records. Defense counsel informed the court on October 12, 2016, that defendant had a medical history of "diagnosis bipolar." Counsel added that he would be requesting a BCX, but needed more time to finish retrieving the records. On December 20, 2016, defense counsel formally requested a BCX and tendered a proposed order, which the court stated it would sign.[1]

¶ 5        The court received a letter from Dr. Fidel Echevarria of Forensic Clinical Services at a hearing on February 6, 2017. The first paragraph of the letter read, "Pursuant to Your Honor's

---

[1] A copy of the order does not appear in the record.

Order," defendant was evaluated on January 25, 2017, "for the purpose of assessing his fitness to stand trial." Dr. Echevarria found defendant mentally fit to stand trial and legally sane at the time of the offense. According to Dr. Echevarria, defendant understood the proceedings, was not on psychotropic medication, and did not need such medication. The court noted that Dr. Echevarria found defendant "fit to stand trial and mentally sane at the time of his examination." Defense counsel stated that he wanted to ask Dr. Echevarria whether he spoke with a physician who "made a diagnosis" of defendant in Puerto Rico, and pending that conversation, the defense "can probably stipulate and forgo any hearing on the issue." The court responded, "If there's not a *bona fide* doubt *** as to the defendant's state of mind, is there any need for a hearing?" Defense counsel said he did not think there was. On March 9, 2017, the trial court entered an order allowing defense counsel to review Dr. Echevarria's psychiatric summary of defendant's examination.[2]

¶ 6      On March 30, 2017, defense counsel said he was willing to stipulate "to the findings" in Dr. Echevarria's letter. The prosecutor responded, "There's no issue, Judge. [Defendant] was found fit to stand trial." The court stated that Dr. Echevarria's letter expressed the "opinion that [defendant] is mentally fit to stand trial" and was "legally sane at the time of the alleged offense." At a subsequent pretrial hearing on May 3, 2017, defense counsel stated that defendant "went for [a] psychological evaluation" at the jail and was told he was "fine."

¶ 7      Defendant rejected the State's offer to plead guilty to aggravated battery with a firearm and the cause proceeded to trial. The evidence established that on August 11, 2014, defendant entered the El Taco Nazo restaurant near the 4100 block of West North Avenue and shot the victim, Fredis Lopez-Serrano, once in the chest from close range. Lopez-Serrano underwent surgery at Cook

---

[2] The psychiatric summary does not appear in the record on appeal.

County Hospital. The two men never interacted before that day, but immediately prior to the shooting, defendant asked Lopez-Serrano, "what's your problem with me?"

¶ 8    The court found defendant guilty on both counts and denied his motion to reconsider and for a new trial. Defendant's presentence investigation report (PSI) revealed that he came from a "stable" family and did not suffer abuse or neglect as a child. He received As and Bs in high school, but required special education for attention deficit disorder (ADD) in elementary school. He attended Triton College from 2012 to 2014. Defendant was injured in a serious vehicular accident on August 12, 2014, and required 149 stitches in his face. During his incarceration, he received mental health treatment. He reported a history of panic attacks, and experienced excessive anxiety and stress due to the case.

¶ 9    After a sentencing hearing on October 19, 2017, the court merged the aggravated battery with a firearm count into the attempt murder count and sentenced defendant to 31 years' imprisonment for attempt murder. It credited defendant with 819 days for presentence incarceration. Defense counsel argued that defendant deserved additional credit for the time he spent in custody in Puerto Rico between October 9, 2014, when he waived extradition to Illinois, and July 23, 2015, when the Chicago police officers took him into custody. The State disagreed, and the court only credited defendant with time starting from July 23, 2015.

¶ 10    The October 19, 2017 mittimus misstated defendant's sentence. The court *sua sponte* issued a corrected mittimus on October 23, 2017, that did not credit defendant for the four days between October 19 and 23, 2017.

¶ 11    On appeal, defendant first argues that the court erred by not conducting an independent inquiry into his fitness to stand trial, and instead relied on a stipulation to Dr. Echevarria's findings.

Defendant admits that he did not properly preserve this claim, but argues that we can reach it on plain error review.

¶ 12    Where a claimed error was not preserved below, the reviewing court can reach the issue on plain error review when a clear or obvious error occurred and "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48. A defendant's fitness to stand trial implicates a fundamental right and is thus cognizable under second prong plain error review. See *People v. Sandham*, 174 Ill. 2d 379, 382 (1996); *People v. Moore*, 408 Ill. App. 3d 706, 710 (2011). We must first decide if a clear or obvious error occurred. *People v. Staake*, 2017 IL 121755, ¶ 33.

¶ 13    The due process clause of the fourteenth amendment requires that a defendant be mentally fit before standing trial. U.S. Const., amend. XIV; *People v. Holt*, 2014 IL 116989, ¶ 51. A defendant is presumptively fit to stand trial, plead, and be sentenced, but will be deemed unfit "if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2014). "A defendant may be competent to participate at trial even though his mind is otherwise unsound." *People v. Eddmonds*, 143 Ill. 2d 501, 519 (1991).

¶ 14    The issue of a defendant's fitness can be raised by the court or the parties at any time before, during, or after trial. 725 ILCS 5/104-11(a) (West 2014). If a *bona fide* doubt as to a defendant's fitness is raised, the court has a duty to hold a fitness hearing. *People v. Haynes*, 174 Ill. 2d 204, 226 (1996). No fitness hearing is required if the court does not find that a *bona fide* doubt exists as to a defendant's fitness. *People v. Hanson*, 212 Ill. 2d 212, 217-18 (2004).

¶ 15   At the defendant's request, the court can order that a qualified expert examine the defendant to determine if a *bona fide* doubt as to the defendant's fitness exists. 725 ILCS 5/104-11(b) (West 2014). The court also has discretion to *sua sponte* request an examination. 725 ILCS 5/104-11(a) (West 2014); *Hanson*, 212 Ill. 2d at 217. The court's mere act of ordering an examination does not demonstrate that *bona fide* doubt exists as to the defendant's fitness. *Hanson*, 212 Ill. 2d at 222. "Whether a *bona fide* doubt as to a defendant's fitness has arisen is generally a matter within the discretion of the trial court." *Sandham*, 174 Ill. 2d at 382.

¶ 16   The record shows that defendant's fitness to stand trial was first raised on June 13, 2016, when defense counsel mentioned the possibility of requesting a BCX because of defendant's "mental health issues." On October 12, 2016, defense counsel relayed to the court that defendant had a history of "diagnosis bipolar." Defense counsel made a formal BCX request on December 20, 2016, which the court granted. After receiving Dr. Echevarria's BCX letter, which deemed defendant fit to stand trial, the court asked whether any additional hearing would be necessary if a *bona fide* doubt did not exist. The parties agreed that an additional hearing would not be needed, and at a later status hearing, stipulated to Dr. Echevarria's findings. Neither party nor the court raised the issue of defendant's fitness again until this appeal.

¶ 17   We find that the trial court did not err by not holding a fitness hearing after receiving the BCX report. The court made no finding of a *bona fide* doubt of defendant's fitness before granting defense counsel's motion for a BCX, and the act of ordering the examination was not proof *per se* that a *bona fide* doubt existed. See *Hanson*, 212 Ill. 2d at 222; see also *People v. Qurash*, 2017 IL App (1st) 143412, ¶ 43. After receiving the BCX report in which Dr. Echevarria found defendant fit to stand trial, the court asked defense counsel if a hearing was necessary "[i]f there's not a *bona fide* doubt" as to defendant's fitness. The court was therefore operating under the belief that there

was no *bona fide* doubt as to defendant's fitness, a proposition to which both parties agreed. This was a reasonable stance, even in light of defendant's medical history of "diagnosis bipolar," because it is well-established that mental health issues are not sufficient on their own to demonstrate lack of fitness. See *Eddmonds*, 143 Ill. 2d at 519. Thus, there was no *bona fide* doubt regarding defendant's fitness at any point, and no fitness hearing was necessary. See *Hanson*, 212 Ill. 2d at 217-18.

¶ 18    Defendant cites to *People v. Cook*, 2014 IL App (2d) 130545, and *People v. Contorno*, 322 Ill. App. 3d 177 (2001), for the proposition that the court cannot rely solely on the stipulated findings of experts to determine a defendant's fitness. This argument is misplaced, however, because in both cases the trial court found a *bona fide* doubt existed regarding the defendants' fitness, but then failed to conduct an independent inquiry. See *Cook*, 2014 IL App (2d) 130545, ¶¶ 3, 19-20; *Contorno*, 322 Ill. App. 3d at 178-79. Here, the court never found that a *bona fide* doubt existed.

¶ 19    Defendant makes two new arguments in his reply brief: (1) the BCX was ordered under section 104-11(a) of the Code of Criminal Procedure of 1963 (725 ILCS 104-11(a) (West 2014)), which requires the court to hold a fitness hearing once a *bona fide* doubt is raised; and (2) the record demonstrates that a *bona fide* doubt existed, and the court never expressly stated otherwise. These arguments are deemed waived because they were presented for the first time in a reply brief. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 20    Even if these arguments were appropriately presented, however, our ruling would remain the same. First, the section under which the court ordered the BCX is inconsequential. As our supreme court explained in *Hanson*, "In either instance, [proceeding under section 104-11(a) or 11(b) of the Code] *** if after the examination the trial court finds no *bona fide* doubt, no further

hearings on the issue of fitness would be necessary." (Internal citations omitted.) *Hanson*, 212 Ill. 2d at 217. Here, notwithstanding that Dr. Echevarria's letter stated the "purpose" of his examination was "assessing [defendant's] fitness to stand trial," the court found that no *bona fide* doubt existed. Therefore, no further inquiry was required.

¶ 21 Second, defendant does not demonstrate that the court abused its discretion by not finding a *bona fide* doubt as to his fitness. The trial court has a duty to order a fitness hearing if at any point a *bona fide* doubt as to a defendant's fitness exists. *Sandham*, 174 Ill. 2d at 382. Factors for a trial court to consider include "a defendant's irrational behavior, demeanor at trial, any prior medical opinion on the defendant's competence, and any representations by defense counsel on the defendant's competence." *People v. Brown*, 236 Ill. 2d 175, 186-87 (2010).

¶ 22 Here, defendant points to no specific behavior or issue with his demeanor that should have concerned the trial court. Additionally, the record contains no prior medical opinion expressing concerns about defendant's fitness to stand trial. Finally, defense counsel accepted Dr. Echevarria's finding, agreed no *bona fide* doubt existed, relayed to the court that a subsequent psychological evaluation from the prison found nothing concerning, and did not question defendant's fitness again during the proceedings. Defendant cites his rejection of a plea offer, but provides no authority holding that a defendant's exercise of his right to trial can indicate a lack of fitness. He also highlights his medical history of a vehicle accident and the fact that he sought mental health treatment in jail, but points to no behavior, remarks from counsel, or physician reports that suggest the court abused its discretion by not finding that these issues created a *bona fide* doubt as to his fitness. It is defendant's burden to demonstrate that the trial court abused its discretion, and he fails to make this showing. See *Sandham*, 174 Ill. 2d at 381-82. Absent error, defendant's request for plain error review is meritless and his default of this issue will be honored.

¶ 23    Defendant's final argument is that the trial court erroneously refused to grant him credit for the time he spent incarcerated in Puerto Rico after waiving extradition to Illinois, and failed to credit him with the four days between his original sentencing date and the court's issuance of a corrected mittimus.

¶ 24    On February 26, 2019, while this appeal was pending, our supreme court adopted new Illinois Supreme Court Rule 472, which sets forth the procedure in criminal cases for correcting sentencing errors in, as relevant here, "calculation of presentence custody credit." Ill. S. Ct. R. 472(a)(3) (eff. Mar. 1, 2019). On May 17, 2019, Rule 472 was amended to provide that "[i]n all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019). "No appeal may be taken" on the ground of any of the sentencing errors enumerated in the rule unless that alleged error "has first been raised in the circuit court." Ill. S. Ct. R. 472(c) (eff. May 17, 2019). Therefore, pursuant to Rule 472, we "remand to the circuit court to allow [defendant] to file a motion pursuant to this rule," raising the alleged errors regarding presentence custody credit. Ill. S. Ct. R. 472(e) (eff. May 17, 2019).

¶ 25    Affirmed; remanded as to presentence custody credit.

¶ 26        SUPPLEMENTAL ORDER UPON DENIAL OF REHEARING

¶ 27    In this appeal, defendant contended he is entitled to additional sentencing credit from the date he waived extradition to Illinois while incarcerated in Puerto Rico on an unrelated offense. Defendant also argued the trial court did not credit him the four days between his original sentencing date and the date of his corrected mittimus. We observed Illinois Supreme Court Rule 472 (eff. Mar. 1, 2019) was adopted on February 26, 2019 and amended on May 17,

2019. The rule provides the reviewing court shall remand all criminal cases pending appeal as of March 1, 2019 or afterwards, where a party has attempted to raise sentencing errors governed by this rule for the first time on appeal, to allow the party to file a motion pursuant to this rule. We also observed the rule states no such appeals may be taken unless the alleged error has first been raised in the circuit court. Ill. S. Ct. R. 472(c) (eff. May 17, 2019). Accordingly, we remanded the cause to the circuit court to allow defendant to file a motion raising the sentencing errors he raised for the first time on appeal.

¶ 28    Defendant has filed a rehearing petition arguing Rule 472 does not require him to file a written motion in the circuit court to preserve his alleged sentencing errors for direct review because he raised them orally during his sentencing hearing. Defendant claims he argued at sentencing that he was entitled to an additional 287 days of sentencing credit for the time spent in custody between the date he waived extradition and the date he was transported to Illinois, but the State argued he could only receive credit for time spent in custody on the underlying charges. The State noted although defendant waived extradition for the charges in this case on October 9, 2014, his waiver occurred while he was in custody for a different offense committed in Puerto Rico. Defendant cites the following colloquy at sentencing:

> "[(DEFENSE COUNSEL)]: And, Judge, just quickly for the record – And I will do the math within the next five minutes and just – He waived extradition in San Juan on October 9th, 2014, went into custody on September 25th, 2014. I think, you know, the argument could be made some of that time is specifically for the …
>
> THE COURT: PSMV charge, correct?

[(DEFENSE COUNSEL)]: For the PSMV. The waiving of the extradition though was on October 9th. I mean, we'd be requesting good time going back to where he waived the extradition. I'm not sure …

THE COURT: What's your position, State?

[(ASSISTANT STATE'S ATTORNEY)]: October when?

[(DEFENSE COUNSEL)]: October 9th, 2014, as per the Justice Department letter, is when he waived extradition to Illinois.

[(ASSISTANT STATE'S ATTORNEY)]: We have his date of arrest as July 23rd, 2015, when Chicago took custody of him.

THE COURT: He was on –

[(DEFENSE COUNSEL)]: That's when he was arrested in Puerto Rico by the Chicago Police, that's correct.

THE COURT: The other time he's under sentence for that PSMV, correct?

[(DEFENSE COUNSEL)]: Correct.

THE COURT: And credited for that time.

[(DEFENSE COUNSEL)]: Well, yes. I mean, he's serving – To be honest, I've never done it when someone – I used to do the Governor's Warrants years ago, and I'm just –

THE COURT: So what's the date, State, that he was arrested?

[(ASSISTANT STATE'S ATTORNEY)]: I have July 23rd, 2015.

THE COURT: That'd be the date I'd credit him with.

Okay. That's the date that I'll give him credit for.

[(DEFENSE COUNSEL)]: And just for the record, we'll ask for it for when he waived extradition, Judge.

THE COURT: All right.

[(DEFENSE COUNSEL)]: But I'll calculate it from July 23rd of '15.

[(ASSISTANT STATE'S ATTORNEY)]: It should be 819 days.

THE COURT: Did you already calculate it?

[(DEFENSE COUNSEL)]: I'll double-check."

¶ 29    On this record, defendant asks that we find he preserved his alleged sentencing errors and then address the merits of his contention. We decline defendant's request as it is neither contemplated by Rule 472 nor supported by caselaw.

¶ 30    Generally, to preserve an alleged sentencing error for review, a contemporaneous objection and a written post-sentencing motion raising the issue are required. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) (citing *People v. Bannister*, 232 Ill. 2d 52, 76 (2008); 730 ILCS 5/5-8-1(c) (West 2006) ("defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence")). This requirement is waived if a defendant makes an oral motion to reconsider sentence and the State does not object. *People v. Davis*, 356 Ill. App. 3d 725, 731 (2005). Accordingly, the trial court admonished defendant in pertinent part:

"If you seek to challenge the sentence or any aspect of the sentencing hearing, you must file, in the trial court, within 30 days of today's date, a written motion asking the Court to reconsider the sentence imposed or reconsider any challenges to the

sentencing hearing. You must set forth all the reasons that you are challenging the sentence or sentencing hearing.

If the motion to reconsider your sentence is granted, a new sentencing hearing will be conducted. Anything that you fail to put in your written motion will be waived for all time."

¶ 31 Defendant acknowledged he understood, but he did not file a written motion in the circuit court raising any alleged sentencing errors. He filed this appeal instead.

¶ 32 While his appeal was pending, our supreme court amended Rule 472 to provide:

"In all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019).

¶ 33 Notwithstanding defendant's assertion that he preserved his alleged sentencing errors by raising them orally at sentencing, Rule 472 requires him to first file a motion in the circuit court requesting the correction of those errors. See *People v. Whittenburg*, 2019 IL App (1st) 163267, ¶ 4 (by rule, a defendant must first file a motion in the circuit court requesting the correction of any sentencing errors enumerated in Rule 472(a)); *People v. Williams*, 2020 IL App (1st) 163417, ¶ 93 (and cases cited therein) (remanding to the circuit court to allow the defendant to file a motion challenging fines and fees imposed as part of his sentence); *People v. Scott*, 2019 IL App (1st) 163022, ¶ 26 (remanding to the circuit court to permit the defendant to file a motion to correct the mittimus). The policy considerations underlying this rule are clear. See *People v. Eason*, 2020 IL App (3d) 180296, ¶ 12. Then-Chief Justice Lloyd Karmeier stated

in an article entitled "Overcoming the Chronic Challenge of Correcting Sentencing Errors: Help is on the Way[:]"

> "To deal with those situations, the new rules create a clear and unambiguous mechanism for fixing the specified types of sentencing errors discovered after judgment has been entered, eliminating uncertainty regarding what needs to be done, where, when and how. The rules make clear that motions to correct the enumerated errors may be made at any time after judgment, including while the case is on appeal, *but such motions must always be directed to the circuit court in the first instance*. If they are not—if the circuit court is not given first crack at fixing the error—the error cannot be grounds for an appeal." (Emphasis added.) Karmeier, *Overcoming the Chronic Challenge of Correcting Sentencing Errors: Help is on the Way*, (Feb. 25, 2019), quoted in *Eason*, 2020 IL App (3d) 180296, ¶ 12.

¶ 34 Defendant did not file a written motion as required by Rule 472, and based on the colloquy at his sentencing hearing, defense counsel did not "raise" the alleged sentencing issues in any meaningful way. See *Eason*, 2020 IL App (3d) 180296, ¶¶ 4, 14 (the defendant did not "preserve" the issue for appeal by simply objecting to the State's calculation of a fine). Defense counsel's *pro forma* objection to the State's calculation of defendant's presentence custody credit did not give the trial court an opportunity to fix any alleged error. See *id.* (counsel's *pro forma* objection without actual argument provided no actual opportunity for the circuit court to fix an error). Accordingly, we deny defendant's petition for rehearing.